# *United States District Court*

FILED

__MIDDLE__ **DISTRICT OF** __ALABAMA__

OCT 3 1 2005

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | |
|---|---|
| **In the matter of the Search of**<br>(Name, address or brief description of person, property or premises<br>to be searched)<br><br>**63 Groner Street**<br>**Daleville, AL** | **APPLICATION AND AFFIDAVIT**<br>**FOR SEARCH WARRANT**<br><br>CASE NUMBER: *1:05mj134-M* |

I ____Steven L. Zeringue_____ being duly sworn depose and say:

I am a(n) __Federal Bureau of Investigation Special Agent_____ and have reason to believe

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

**63 Groner Street**
**Daleville, AL**

in the _____Middle_____ District of ____Alabama_____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

**See Attachment A**

which is (state one or more bases for search set forth under Rule 41(b) of the Federal Rules of Criminal Procedure) concerning a

violation of Title __18____ United States Code, Section(s) _2252(A)_

The facts to support the issuance of a Search Warrant are as follows:

**See Attached Affidavit Which is Incorporated by Reference Herein**

Continued on the attached sheet and made a part hereof:  ☒ Yes  ☐ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

__October 19, 2005_____    at    __Montgomery, Alabama_____
Date                                          City and State

__Vanzetta P. McPherson, U.S. Magistrate Judge__    _____
Name and Title of Judicial Officer                  Signature of Judicial Officer

## AFFIDAVIT OF STEVEN L. ZERINGUE

I, Steven L. Zeringue, a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice, having been duly sworn, state:

1.  I am a Special Agent assigned to the Mobile Division of the FBI, and have been so employed for two years.  As such, I am responsible for investigating federal offenses involving the sexual exploitation of children;

2.  I make this affidavit in support of an application for a warrant to search the apartment located at 63 Groner Street, Daleville, Alabama.  The apartment complex is a multi family single story with cream colored vinyl siding with brown trim. The entry to the apartment complex is from Joe Bruer Road situated in the Level Plains area.  The location of 63 Groner Street is the second apartment from the left when approaching the apartment complex from Joe Bruer Road.  A dirt driveway leads to the apartment complex from Joe Bruer Road.

3.  The statements contained in this affidavit are based on my experience and background as a Special Agent of the FBI, as well as information provided by other FBI agents specially trained in the seizure and analysis of computers and electronic media.  The information contained in this search warrant is based

upon information provided by Special Agent Steven Forest who is currently assigned to the FBI's Innocent Images National Initiative which targets individuals involved in the online sexual exploitation of children. For the past three years SA Forrest has been involved in online undercover investigations relating to AOL users involved in the transmission and/or receipt of child pornography, as well as AOL chat rooms commonly used as a forum for such activity. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of violations of Title 18, United States Code, Sections 2252 and 2252A is located at 63 Groner Street, Daleville, Alabama.

## I.   COMPUTERS AND CHILD PORNOGRAPHY

4.   The undersigned has participated in investigations of persons suspected of violating federal child pornography laws and child exploitation laws, including but not limited to Title 18 U.S.C. Sections 2252 and 2252A.

5.   Computers and computer technology have revolutionized the way in which individuals interested in child pornography interact with each other. Child pornography formerly was

produced using cameras and film (either still photography or movies). The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. There were definable costs involved with the production of pornographic images. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and/or telephone calls. Payment also occurred using these methods.

6.    The advent and development of computers has changed this process. Computers serve four functions in connection with child pornography: production (reproduction), communication, distribution, and storage.

7.    Pornographers can now transfer photographs from a camera into a computer-readable format with a scanner. With the advent of digital cameras, the images can now be downloaded directly into a computer. Pornographers can also reproduce both still and moving images directly from a video camera. The camera is attached, using a cable, directly to the computer using a device called a video capture board. This device turns the video output into a form that is usable by computer programs. The output of the video camera can be stored, transferred, or printed out directly from the computer.

8.   As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography.

9.   Previously, as a general matter, pornographers had to rely on personal contact, U.S. Mail, and telephonic communications in order to sell, trade or market pornography. The development of the computer has also changed that.  A modem allows a computer to connect to another computer through the use of telephone lines, cable or similar communication links.  By connection to a host computer, electronic contact can be made to literally millions of computers around the world. The computer's ability to store images in digital form makes the computer itself an ideal repository for pornography.  A single floppy disk can store dozens of images and hundreds of pages of text.  The size of the onboard electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within recent years.  Hard drives with a capacity of more than forty gigabytes are quite common.  These drives can store thousands of images at very high resolution.

10.  A host computer is one that is attached to a dedicated network and serves many users.  These host computers are sometimes commercial online services, such as America On-line (AOL), which allow subscribers to dial a local number and connect

to a network, which is in turn connected to their host systems. These service providers allow electronic mail service between their own subscribers, and those of other networks or individuals on the Internet.

11.   Some of these systems, including AOL, offer their subscribers the ability to communicate publicly or privately with each other in real time in the form of "chat rooms."  Contact with others online can be either open and anonymous, or private and personal in the form of person-to-person instant messages.

## AMERICA ONLINE

12.   America Online (AOL), is a commercial computer service, also known as a commercial bulletin board, offering subscribers the ability to communicate online with other individuals through chat rooms, e-mail and/or instant messaging.

A.   A chat room is an electronic meeting room provided by AOL and other similar services, which allows Internet users to have group conversations.  For example, within the AOL network there are two categories of chat rooms, they are AOL created chat rooms and AOL member created chat rooms.  Within these two categories exist various general topic areas and within these topic areas exist the various chat rooms.

B.    E-mail is a popular form of transmitting messages and/or files in an electronic environment between computer users. When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted to the recipient's mail server and then transmitted to its final destination.  A server is a computer that is attached to a dedicated network and serves many users.  An e-mail server allows users to post and read messages and to communicate via electronic means, as well as attaching and sending various types of files including graphic files.

C.    "Instant messaging" (IM) is real-time typewritten conversation between individuals, much like an oral conversation, and is used to conduct one-on-one conversations.

13.  To communicate using AOL, each subscriber must have access to a computer which communicates through a modem connected to telephone and cable lines with the central computer system located in Vienna, Virginia.  Each subscriber can communicate with other AOL users via E-mail or in real time through chat rooms, private chat rooms or instant messages when the other subscriber is also online.  Within the system, text messages and graphic images (such as photographs) can be sent to a subscriber, or to any person with an Internet e-mail address. Both text and graphics files can be saved to the computer's hard drive or other electronic media for access and printing at any

time.

14.   Another feature offered to AOL subscribers is a "buddy list."  Through this feature an AOL subscriber can maintain a list of individual AOL screen names that they may wish to have contact with.  This feature allows an individual to determine when their "buddies" are online.

15.   Every computer connected to the Internet must have a unique address known as an IP (Internet Protocol) address. The IP address is a numeric address written as a set of four numbers separated by dots, for example 130.102.42.17. The address provides a unique identification of a computer and the network it belongs to.

## II.   DETAILS OF INVESTIGATION

### INVESTIGATION RE: AOL SCREEN NAME CARTOONSTRADEER

16.   On August 10, 2005, SA Forrest, while acting in an undercover capacity, utilized America Online (AOL) to investigate individuals involved in the transmission and/or receipt of child pornography.  While signed onto AOL, SA Forrest engaged in online contact with numerous individuals to include an individual using the AOL screen name KINGSBREWER.  The following information is provided relative to e-mail communications received from

KINGSBREWER which had videos of child pornography attached
thereto, which had been previously transmitted to/or by AOL
screen name CARTOONSTRADEER.

17.  At approximately 11:02AM EDT, SA Forrest received an e-
mail from this individual which had a video file attached thereto
titled "-PretnSucks-Dick.mpg".  After downloading and reviewing
this video SA Forrest determined that the video depicts minors
engaging in sexually explicit conduct.  A review of the e-mail
header associated with the transmission of this video revealed
that AOL screen name KINGSBREWER had received this video from AOL
screen name CARTOONSTRADEER on 8/9/2005.

18.  At approximately 11:03AM EDT, SA Forrest received an e-
mail from this individual which had a video file attached thereto
titled "1 (2).mpg".  After downloading and reviewing this video,
SA Forrest determined that the video appears to depict adults
engaging in sexual activity. A review of the e-mail header
associated with the transmission of this video revealed that AOL
screen name KINGSBREWER had received this video from AOL screen
name CARTOONSTRADEER on 8/9/2005.

19.  At approximately 11:03AM EDT, SA Forrest received an e-
mail from this individual which had a video file attached thereto
titled "8yoeatcum.mpg".  After downloading and reviewing this

video SA Forrest determined that the video depicts an adult male engaging in sexually explicit conduct with a young child.  A review of the e-mail header associated with the transmission of this video revealed that AOL screen name KINGSBREWER had received this video from AOL screen name CARTOONSTRADEER on 8/9/2005.

20.  At approximately 11:04AM EDT, SA Forrest received an e-mail from this individual which had a video file attached thereto titled "1(9).mpeg".  After downloading and reviewing this video SA Forrest determined that the video may depict a minor engaging in sexually explicit conduct.  A review of the e-mail header associated with the transmission of this video revealed that AOL screen name KINGSBREWER had received this video from AOL screen name CARTOONSTRADEER on 8/9/2005.

## ADMINISTRATIVE SUBPOENA TO AOL

21.  Based upon the AOL screen name CARTOONSTRADEER, SA Forrest had a USDOJ/FBI Administrative Subpoena served upon the Internet Service Provider (ISP) AOL in order to determine the identity of the subscriber associated with the aforementioned screen name.  As a result of the subpoena, AOL provided the following subscriber information associated with screen name CARTOONSTRADEER:

NAME:              LEE EDENS

ADDRESS:           63 GRONER ST

                   DALEVILLE, AL 36322

DAY#:              334-685-0086

EVENING#:          334-477-6749

ACCOUNT STATUS:    Active MEMBER SINCE:    01-30-2005

SCREEN NAME (S):   edenslee; tjepsk4ever; cartoonstradeer;

                   tradeer;

BILLING INFO:      LEE EDENS

ACCOUNT NUMBER:    106-6244-906


22.  At the time SA Forrest subpoenaed subscriber
information for AOL screen name CARTOONSTRADEER (referenced
above), SA Forrest had also requested Internet Protocol (IP) data
log information from AOL related to the transmission of child
pornography by this individual.  This was done in an effort to
determine, if possible, the telephone number or cable connection
used by this individual to access AOL during the time
CARTOONSTRADEER transmitted child pornography to KINGSBREWER.  As
a result, AOL advised SA Forrest that this individual had used
the Internet Protocol (IP) address 67.9.50.248 when accessing AOL
during the period this individual was communicating with SA
Forrest. SA Forrest was able to determine from the IP address
that Time Warner Cable was the current registrant for this
particular IP address.

**ADMINISTRATIVE SUBPOENA SERVED ON TIME WARNER CABLE**

23.  SA Forrest subsequently served an Administrative Subpoena on TIME WARNER CABLE. In response to this subpoena TIME WARNER CABLE provided the following subscriber information concerning the use of IP address 67.9.50.248 on 8/9/2005.

|  |  |
|---|---|
| NAME: | ED EDENS |
| ADDRESS: | 63 GRONER STREET |
|  | DALEVILLE, AL 36322 |
| PHONE: | 334-598-9193 |
| USERNAMES: | eedens |

24.  This information would indicate that the individual using the AOL screen name CARTOONSTRADEER to transmit child pornography on 8/9/2005, did so through the use of a cable line which has a listed service address of 63 Groner Street, Daleville, Alabama which is consistent with the address used in the subscriber information obtained from AOL relative to the account to which AOL screen name CARTOONSTRADEER is associated.

**UNDERCOVER ONLINE SESSION DATED 8/23/2005 (UBF-1044)**

25.  On August 23, 2005, SA Forrest, while acting in an undercover capacity, utilized America Online (AOL) to investigate individuals involved in the transmission and/or receipt of child

pornography. After signing onto AOL, SA Forrest observed that an individual using the AOL screen name CARTOONSTRADEER was also signed online. At approximately 2:43PM EDT, SA Forrest initiated an Instant Message (IM) session with this individual during which SA Forrest and this individual discussed trading images of children engaging in sexual activity. During this IM session, CARTOONSTRADEER advised that he was a 45 year old male.

26.  At approximately 3:04PM EDT, SA Forrest sent this individual an e-mail which had a corrupted file attached thereto titled "(Pthc)-Webcam-9Yo Tiffany.mpg". This file is purposely corrupted so that the recipient of the file cannot open it.

27.  At approximately 3:11PM EDT, SA Forrest received an e-mail from this individual which had a video attached thereto which was titled "2m21s 12 girl strip.mpg". After downloading and reviewing this video SA Forrest determined that the video depicted a minor female dancing while she undresses.

28.  At approximately 3:12PM EDT, SA Forrest sent this individual an e-mail which had a corrupted file attached thereto titled "r@ygold-pthc.lilone.daddy.avi". This file is purposely corrupted so that the recipient of the file cannot open it.

29.  At approximately 3:15PM EDT, SA Forrest received

an e-mail from this individual which had a video attached thereto which was titled "4yo-refusing-cumshot-wsound.mpeg". After downloading and reviewing this video SA Forrest determined that the video depicted an adult male engaging in sexually explicit conduct with a child who appears to be below the age of five (5) years old.

30.    Between 3:43PM EDT and 3:50PM EDT, SA Forrest received three (3) additional e-mails from CARTOONSTRADEER.  One of the e-mails had no text or attached message, one of the e-mails had a picture which depicted cartoon characters engaging in sexual activity, and the other e-mail had one image which depicted cartoon characters engaging in sexual activity, and a second image which depicted a pregnant adult in the nude.

## ADMINISTRATIVE SUBPOENA TO AOL

31.    Based upon the AOL screen name CARTOONSTRADEER, SA Forrest had a USDOJ/FBI Administrative Subpoena served upon the Internet Service Provider (ISP) AOL in order to determine the identity of the subscriber associated with the aforementioned screen name. As a result of the subpoena, AOL provided the following subscriber information associated with screen name CARTOONSTRADEER:

NAME:              LEE EDENS

ADDRESS:            63 GRONER ST

                    DALEVILLE, AL 36322

DAY#:               334-685-0086

EVENING#:           334-477-6749

ACCOUNT STATUS:     Active

MEMBER SINCE:       01-30-2005

SCREEN NAME(S):     edenslee; tjepsk4ever;

                    cartoonstradeer

BILLING INFO:       LEE EDENS

ACCOUNT NUMBER:     106-6244-906


32.  At the time SA Forrest subpoenaed subscriber
information for AOL screen name CARTOONSTRADEER (referenced
above), SA Forrest had also requested Internet Protocol (IP) data
log information from AOL related to SA Forrest's online contact
with  this individual.  This was done in an effort to determine,
if possible, the telephone number or cable connection used by
this individual to access AOL during the time period SA Forrest
was communicating with this individual online.  As a result, AOL
advised SA Forrest that this individual had used the Internet
Protocol (IP) address 67.9.50.248 when accessing AOL during the
period this individual was communicating with SA Forrest. SA
Forrest was able to determine from the IP address that Time
Warner Cable was the current registrant for this particular IP
address.  It is noted that IP address 67.9.50.248  was the same

IP address used by CARTOONSTRADEER on August 9, 2005 to transmit child pornography.

## ADMINISTRATIVE SUBPOENA SERVED ON TIME WARNER CABLE

33.  SA Forrest subsequently served an Administrative Subpoena on TIME WARNER CABLE. In response to this subpoena TIME WARNER CABLE provided the following subscriber information concerning the use of IP address 67.9.50.248 on 8/23/2005.

| NAME: | ED EDENS |
| --- | --- |
| ADDRESS: | 63 GRONER STREET |
| | DALEVILLE, AL 36322 |
| PHONE: | 334-598-9193 |
| USERNAMES: | eedens |

34.  This information would indicate that the individual using the AOL screen name CARTOONSTRADEER to transmit child pornography on 8/23/2005, did so through the use of a cable line which has a listed service address of 63 Groner Street, Daleville, Alabama which is consistent with the address used in the subscriber information obtained from AOL relative to the account to which AOL screen name CARTOONSTRADEER is associated.

**UNDERCOVER ONLINE SESSION DATED 8/24-25/2005 (UBF-1051)**

35.   On August 24, 2005, SA Forrest, while acting in an
undercover capacity, utilized America Online (AOL) to investigate
individuals involved in the transmission and/or receipt of child
pornography. While signed onto AOL, SA Forrest received e-mail
communications from AOL screen name KINGSBREWER which had images
of child pornography attached thereto, which had been transmitted
by KINGSBREWER to CARTOONSTRADEER at the same time they were
transmitted to SA Forrest. These communications are described as
follows:

36.   After signing onto AOL, SA Forrest accessed his
online mailbox and observed that an individual using the AOL
screen name KINGSBREWER had sent SA Forrest two e-mail
communications which are described as follows:

37.   At approximately 5:28AM EDT on 8/24/2005,
KINGSBREWER sent SA Forrest an e-mail communication which had
twelve images attached thereto. After reviewing these images SA
Forrest determined that at least eleven of these images depict
children engaging in sexually explicit conduct. A review of the
e-mail header associated with the transmission of these images
revealed that KINGSBREWER has also transmitted these images to
AOL screen names CARTOONSTRADEER and JDCKNS7 at the same time

they were transmitted to SA Forrest, and had received these images at approximately 4:20AM EDT on 8/24/2005 from AOL screen name YOURGODNOW188.

38.  At approximately 5:28AM EDT on 8/24/2005, KINGSBREWER sent SA Forrest an e-mail communication which had eight images attached thereto.  After reviewing these images SA Forrest determined that at least six of these images depict children engaging in sexually explicit conduct. A review of the e-mail header associated with the transmission of these images revealed that KINGSBREWER has also transmitted these images to AOL screen names CARTOONSTRADEER and JDCKNS7 at the same time they were transmitted to SA Forrest, and had received these images at approximately 4:20AM EDT on 8/24/2005 from AOL screen name YOURDOGNOW188.

**UNDERCOVER ONLINE SESSION DATED 9/6/2005 (UBF-1060)**

39.  On September 6, 2005, SA Forrest, while acting in an undercover capacity, utilized America Online (AOL) to investigate individuals involved in the transmission and/or receipt of child pornography. While signed onto AOL, SA Forrest received e-mail communications from AOL screen name KINGSBREWER which had images of child pornography attached thereto, which had been transmitted by KINGSBREWER to CARTOONSTRADEER at the same

time they were transmitted to SA Forrest. These communications are described as follows:

40.   After signing onto AOL, SA Forrest accessed his online mailbox and observed that an individual using the AOL screen name KINGSBREWER had sent SA Forrest two e-mail communications which are described as follows:

41.   At approximately 6:47PM EDT on 9/2/2005, KINGSBREWER sent SA Forrest an e-mail communication which had nine images attached thereto. After reviewing these images SA Forrest determined that all of these images appear to depict children engaging in sexually explicit conduct. A review of the e-mail header associated with the transmission of these images revealed that KINGSBREWER has also transmitted these images to AOL screen names ANDREABIYNG; JAMY1982;  and CARTOONSTRADEER, and had received these images at approximately 6:41PM EDT on 9/2/2005 from AOL screen name YOURGODNOW188.

42.   At approximately 2:23PM EDT on 9/6/2005, KINGSBREWER sent SA Forrest an e-mail communication which had fifty-eight (58) images attached thereto. After reviewing these images SA Forrest determined that at least twenty-one (21) of these images depict children engaging in sexually explicit conduct. Additionally, the majority of the remaining images could

be considered child erotica. A review of the e-mail header
associated with the transmission of these images revealed that
KINGSBREWER has also transmitted these images to AOL screen names
SJF512; JAMY182; SUSAN19MARRIED; MADAMEDAR; SHERRYBI4YOU and
CARTOONSTRADEER at the same time they were transmitted to SA
Forrest.


## AOL MEMBER PROFILE


43.  SA Forrest conducted a search of the AOL Member
Directory in an effort to determine if any profiles had been
created for AOL screen names associated with the AOL account in
the name of LEE EDENS and determined that profiles had been
created for two of the three screen names associated with EDENS'
account, which included screen names CARTOONSTRADEER and TRADEER.

## PUBLIC RECORDS INFORMATION


44.  AutoTrackXP searches list an EDWARD LEE EDENS as
having SSAN: 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 and Date of Birth 8/3/1960, this would
make EDENS presently 45 years of age which is consistent with the
age provided by CARTOONSTRADEER to SA Forrest during their online
contact on August 23, 2005.


45.  On 10/17/2005, a inquiry was conducted through the
Alabama Criminal Justice Information Center which determined that

Edward Lee Edens, Jr. has an Alabama Driver's license.  The
address listed on the driver license is 63 Groner Street,
Daleville, Alabama.

46.  Based upon the aforementioned information, your
affiant believes that evidence relating to the transmission of
child pornography will be found at the residence located at 63
Groner Street, Daleville, Alabama.

47.  On 10/19/2005, FBI agents made contact with Donna
Thoma who identified herself as the apartment manager.  Thoma
resides at 67 Groner Street, Daleville, Alabama.  Thoma confirmed
that the resident residing at 63 Groner Street has the last name
of Edens.

48.  On 10/19/2005, FBI agents observed a 1994 Nissan,
King Cab pickup, blue in color, bearing Alabama Licence plate
26A974K, which is registered to Edward Lee Edens, Jr., at 63
Groner Street, Daleville, Alabama, 36322, parked in front 63
Groner Street, Daleville, Alabama.

## SEXUAL EXPLOITATION OF CHILDREN BACKGROUND

49. The majority of individuals who collect child
pornography are persons who have a sexual attraction to

children.  They receive sexual gratification and satisfaction from actual physical contact with children and from fantasy involving the use of sexually explicit pictures of children.

50.  The majority of individuals who collect child pornography often seek out and correspond with like minded individuals, to share information and trade child pornography and child erotica.  This contact helps these individuals to rationalize and validate their sexual interests and behavior.

51.  The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings on the subject of sexual activities with children, as a way of understanding their own feelings and justifying those feelings.  Such individuals rarely destroy these materials because of the psychological support they provide.

52.  The majority of individuals who collect child pornography go to great lengths to conceal and protect their collections and rarely, if ever, dispose of their sexually explicit materials.

53.  The majority of inidividuals who collect child pornography maintain, books, magazines, newspapers and other writings on the subject of sexual activities with children as a

way of understanding their own feelings and justifying those feelings. Such individuals rarely destroy these materials because of the psychological support they provide.

## CONCLUSIONS

54. Based upon the foregoing, affiant has probable cause to believe that evidence of violations of Title 18, United States Code, Sections 2252 and 2252A, involving the possession and distribution of child pornography, is located at 63 Groner Street, Daleville, Alabama.


Special Agent Steven L. Zeringue
Federal Bureau of Investigation


Sworn to and subscribed
before me this ____
day of October , 2005


Vanzetta P. McPherson
United States Magistrate Judge

ATTACHMENT A

DESCRIPTION OF ITEMS TO BE SEIZED


Affiant seeks to search for, and seize, evidence and instrumentalities of pornography, including:


1.      Computer hardware, computer software, computer-related documentation, computer passwords and data security devices, further described as follows:


(A)     Computer hardware consists of all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data.  Hardware includes (but is not limited to) any data-processing devices (such as central processing unit, memory typewriters, and self-contained "laptop" or "notebook" computer); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk devices and diskettes, tape drives and tapes, optical storage devices; transistors-like binary devices, and other memory storage devices); peripheral input-output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); and related communication devices (such as modems,

cables, and acoustic couplers, automatic dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks).

(B)    Computer software is digital information which can be interpreted by a computer and any of its related components to direct the way they work.  Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications, (like word processing, graphic, or spreadsheets programs), utilities, compilers, interpreters, and communications programs.

(C)    Computer related documentation consists of written, recorded, printed or electronically stored material which explains or illustrates the configuration or use of any seized hardware, software, or other related items.

(D)    Computer passwords and other data security devices are designed to restrict access or to hide computer software, documentation or data.  Data security devices

may consist of hardware, software, or other programming code. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well reverse the process to restore it.

2.    Any and all computer correspondence pertaining to (1) the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United State Code, Section 2256; or (2) the persuading, inducing or enticing of a child under the age of 16 to engage in sexual activity, through the use of any facility or means of interstate commerce (or attempting to do so).

3.    Any child pornography, in whatever form, as defined in Title 18, United State Code, Section 2256.

4.    Any and all computer correspondence pertaining to the travel in interstate commerce for the purpose of

engaging in illegal sexual activities with children under 18.

5.      Any and all computer correspondence (1) offering to transmit through interstate commerce including by United State mails or by computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United State Code, Section 2256.

6.      Any and all computer correspondence identifying persons (1) transmitting, through interstate commerce, including by United State mails or by computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United State Code, Section 2256; or (2) persuading, inducing or enticing of a child under the age of 16 to engage in sexual activity, through the use of any facility or means of interstate commerce (or attempting to do so).

7.      Any and all electronic communications and E-mail.

8.      Address books, phone books that might contain information on other subjects and/or victims.

9.      Any and all audio/visual equipment with the capability

of creating or editing tapes, films, movies, or other visual depictions of minors engaging in sexually explicit conduct.

10.  Receipts, and or other records, indicating the processing or developing of film.

11.  Non-sexual photographs, pictures, or video tapes, of children unknown to affiant.

12.  Information leading to the identity and age of the children depicted in the images described above.

13.  Photographs, magazines, movies, video tapes, negative slides, and undeveloped film depicting nudity of both adults and children.

14.  Non-sexual photographs, pictures, or video tapes of children, commonly referred to as child erotica.

15.  Writings, including, but not limited to, diaries, ledgers, letters, or other correspondence, both written and electronic, which includes sexual content.

16.  Any and all letters, envelopes, and other

correspondence identifying persons transmitting, through the United States mail, or by computer, any visual depiction of children engaging in sexual conduct.

17.    Indicia of occupancy, consisting of items tending to establish the identity of the person, or persons, having control of the premises at 63 Groner Street, Daleville, Alabama.